IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IPC SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-443 (GMS) |
| | ) | |
| CLOUD9 TECHNOLOGIES LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## [PROPOSED] ESI PROTOCOL ORDER

### I.   Sources of ESI

a.   Plaintiff IPC Systems, Inc. ("Plaintiff") and Defendant Cloud9 Technologies LLC ("Defendant"), hereafter collectively referred to as "the Parties," agree to identify appropriate limits to discovery, including limits on custodians, subject matter and time period to guide preservation and discovery.

b.   Absent a showing of good cause the following additional categories of ESI need not be preserved:

  i.   Unallocated, slack space, deleted data, or file fragments;

  ii.   Data only accessible by use of computer forensics;

  iii.   Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve;

  iv.   Data relating to online access, such as temporary internet files, browser history, file or memory caches and cookies;

  v.   Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system or network (e.g., date last opened);

  vi.   Telephone or VOIP voice messages that are not regularly stored or saved on a server;

  vii.   Instant messages that are not regularly stored or saved on a server;

  viii.   Data stored on cell phones or BlackBerry devices provided that a copy of such information is routinely saved elsewhere;

  ix.   Logs of calls made from mobile devices;

x.      Server, system or network logs;

xi.     Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a report;

xii.    Data remaining from systems no longer in use that is unintelligible on the systems in use; or

xiii.   Back-up data that are substantially duplicative of data that are more accessible elsewhere.

c.   Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.  For the avoidance of doubt, CDs, DVDs or other media that are used in the ordinary course of business to store original data shall be searched for responsive material.

d.   If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party.  Absent a showing of good cause, a requesting party may request no more than ten (10) additional terms/phrases to be used in connection with the electronic search.  Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The producing party shall search (i) the non-custodial data sources identified in in the producing party's Paragraph 3 Disclosures under the D. Del. Default Standard for Discovery; and (ii) emails and other ESI maintained by the custodians identified in the producing party's Paragraph 3 Disclosures under the D. Del. Default Standard for Discovery.

## II.   General Production Format

a.   Absent written consent, all documents produced in this case shall be exchanged electronically.  The Parties will produce ESI, except as described in paragraph (b) below, in either 300 DPI TIFF image format or readable .pdf image format (collectively referred to as "TIFF" in the remaining paragraphs of this order) provided that the documents do not become illegible or unusable when converted to these formats.  If a document is produced in readable .pdf image format, the Parties agree to work together to accommodate a reasonable request a producing party to have a reasonable number of documents produced in TIFF image format.

b.   Certain documents that become illegible or unusable when converted to TIFF image format (Microsoft Excel files, other similar spreadsheet application files, Microsoft PowerPoint, Microsoft Access, Microsoft Project, media files, and html files), must be produced in native format with placeholder sheet, unless they contain information that requires redaction.  Each Party reserves its rights to seek additional electronic documents in their native format.

c.      All native file documents will receive a bates number on the document level, and any TIFF document will receive and will be stamped with a bates number on the page level as described in Section III below.  Each document produced in native format will receive a file name which will match the starting bates number for the bates range and include the applicable confidentiality designation assigned by the producing party pursuant to the Protective Order e.g., "ABC0000001 – CONFIDENTIAL – ATTORNEYS' EYES ONLY.xlsx."

d.      Documents that are in color may be produced in color at the producing party's discretion.  A receiving party may request that a document be produced in color where color is integral to understanding the document or any information contained therein.  If the producing party raises any objection to producing a requested document in color, the Parties agree to negotiate in good faith to resolve any issues pertaining to color production of the requested document.

e.      When processing ESI data, the Parties shall conform dates of ESI document metadata to EDT date format (universal time standard / global time standard).

f.      A producing party may, at its option, de-duplicate data (i.e., remove documents with identical hash values) within each custodian's data or across all of the party's custodians' data.  For purposes of this provision, a document with notes or other marks in it is not a duplicate of the same document that does not include such notes or other marks.

g.      A producing party may, at its option, review and produce only the inclusive emails in an email thread.  To be clear, a producing party may only omit from review and production an email that is duplicative of an email that has been or otherwise will be produced, in its entirety, as part of a larger email thread.  Under this provision, a party shall not redact or otherwise omit from review and production any duplicative email from a different or otherwise separate email thread.  For purposes of this provision, an email or printout thereof containing notes or other marks in it is not duplicative of the same email or printout thereof that does not include such notes or other marks.

h.      All production documents will be produced with extracted text and load files including the data fields provided in Section IV, below.  In those instances where redaction is used, OCR text will be provided in lieu of the extracted text to allow for removal of the redacted text from production.  For documents produced in native format, in addition to producing extracted text and the data fields in Section IV below, the producing party will provide slip sheets endorsed with the production number and level of confidentiality pursuant to any applicable protective orders in this case.

i.      Non-electronic documents shall be scanned into the image format listed in Section III; OCR text will be provided for each document.

**III.    Image Format**

   a.    Documents that are converted to TIFF image format will be produced in accordance with the following technical specifications:

   i.    Images will be single-page, Group IV TIFF black & white image files at 300 dpi;

   ii.    Bates numbers should be endorsed on the lower right corner of all TIFF images and will be a unique, consistently formatted identifier, i.e. alpha prefix along with a fixed length number (e.g., ABC0000001).  The number of digits in the numeric portion of the bates number format should not change in subsequent productions.

   iii.    Confidentiality designations, if any, will be endorsed on the lower left corner of all TIFF images;

   iv.    Any documents with tracked changes will be produced in a TIFF format with the tracked changes indicated.

   b.    Images will be delivered with an image load file in the Opticon (.OPT) file format.

   c.    Images, native files, and text files should be stored and delivered in separate folders named "IMAGES," "TEXT" and "NATIVE."  Folders should be segmented into directories not to exceed 1,000 files.

**IV.    Database Load File**

   a.    A concordance default delimited file will be provided with the following fields of metadata, if they exist and are available, subject to the provisions herein:

   i.    Extracted data and searchable text according to specifications referenced in Section V below; the DAT file should also include a TEXT LINK: the full path to the location of the document level text file as included in the document production;

   ii.    The following metadata fields: Start Bates No., End Bates No., Attach Begin, Attach End, Page Count, Custodian, Dupe (or All) Custodians, File Name, File Size, Document Created Date, Document Last Modified Date, Document Last Accessed Date, File Type (or File Extension), Text Link (path to text), Native Link (path to native file), Confidentiality Designation, Redactions (Y/N), MD5 Hash; and

   iii.    In addition to the metadata to be produced for all ESI, for all email the producing party will also produce the following metadata fields:  Subject, Author, Recipients, From, To, Copyees, Blind Copyees, Date and Time Sent, Date Received, Time Received, Email Conversation Thread ID,

Attachment File Name, Begin Attachment, and End Attachment.  Family relationships among documents, including e-mail and attachments, will be maintained by ensuring that attachments immediately follow their parent e-mail or document, and setting the "begin attachment" and "end attachment" metadata fields appropriately.

**V.     Searchable Text**

a.      Searchable text of entire documents will be produced either as extracted text for all documents that originate in electronic format, or, for any document from which text cannot be extracted, as text generated using Optical Character Recognition (OCR) technology.  OCR text will be provided for all documents that originate from hard copy or paper format.  For redacted documents, the full text of the redacted version of the document will be produced.

b.      Searchable text will be produced as a document-level multi-page ASCII text file with the text file named the same as the Start Bates No. field, placed in a separate folder.  The full path of the text file must be provided in the .DAT file for the TEXT field.

**VI.    Native Files**

a.      Native file documents, emails or attachments may be included with the electronic production using the below criteria:

  i.      Documents produced in native format shall be re-named to reflect the production number and confidentiality designation assigned by the producing party pursuant to the Stipulated Protective Order;

  ii.     The full path of the native file must be provided in the .DAT file for the NATIVE LINK field; and

  iii.    The confidentiality designation under the Protective Order to be entered in this action will be produced in the load file in the DESIGNATION field.

b.      If ESI is produced in native file format, a placeholder sheet will be placed in the Image Production and will be marked with the next available Bates number.  This placeholder sheet will state "Document Produced in Native Format" and will contain a Doclink that links to the load file containing the native file.  This placeholder sheet will also include the native filename and where applicable any confidentiality designation assigned by the producing pursuant to the Protective Order.  The native file will be renamed with the same Bates number and confidentiality designation as its corresponding placeholder sheet.  The metadata for the produced native file shall be maintained as found in the original document.

c.      If documents produced in native format are printed for use in deposition, motion or hearing, the party printing the document must print the applicable placeholder sheet and affix the same on top of the native file that is printed.

## VII.   Privilege

a.      The Parties agree that any communications and documents, if privileged or protected as work product, generated after the filing of this action do not need to be included on any privilege log provided pursuant to Rule 26(b)(5). Notwithstanding the foregoing, the Parties reserve the right to request information within the scope of Rule 26(b)(5)(A) regarding such communications and documents on a case-by-case basis.

b.      Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product-protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

## VIII.   Search Tools and Methodologies

a.      The Parties recognize that a variety of search tools and methodologies including, but not limited to, technology assisted review tools exist and should be considered and discussed by the parties.  The Parties agree that within 30 days of executing this ESI Protocol, they will discuss and strive to agree upon appropriate search protocols to be used for locating responsive ESI in the present litigation.  The search protocols will, among other things, identify the data sources and custodians each party believes will possess responsive information, propose search terms (if appropriate), and describe any predictive coding/technology-assisted-review tools the party may employ.

b.      The search protocols will also describe any sampling/testing procedure a party intends to use to validate its search methodology.  The Parties will meet and confer and strive to reach agreement as to such procedures and validation statistics.  In the event that the Parties are unable to reach agreement, they will submit a joint statement outlining any areas of dispute to the Court for resolution

## IX.   Proportionality

a.      The parties will use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs

Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com

*Attorneys for Plaintiff IPC Systems, Inc.*

OF COUNSEL:

Peter Shapiro
David Varghese
FITZPATRICK, CELLA, HARPER, AND SCINTO
1290 Avenue of the Americas
New York, NY  10104
(212) 218-2100

Jason M. Dorsky
FITZPATRICK, CELLA, HARPER, AND SCINTO
975 F Street NW
Washington, DC 20004
(202) 530-1010

Edward J. DeFranco
Patrick D. Curran
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor,
New York, NY 10010
(212) 849-7000

MORRIS JAMES LLP

/s/ Kenneth L. Dorsney

Kenneth L. Dorsney ( #3726)
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801-1494
(302) 888.6800
kdorsney@morrisjames.com

*Counsel for Cloud9 Technologies LLC*

OF COUNSEL:

Michael A. Oakes
Tyler Maddry
Susan Wiltsie
Andrea Calem
Steven L. Wood
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave NW
Washington, DC 20037
(202) 955-1500

        IT IS SO ORDERED, this _____ day of November 2017.

                                        _____
                                        United States District Judge