# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IPC SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CLOUD9 TECHNOLOGIES LLC, <br><br> Defendant. | C.A. NO.: 1:16-CV-00443-CFC <br><br> JURY TRIAL DEMANDED <br><br> PUBLIC - REDACTED VERSION |

## CLOUD9'S INITIAL DISPUTE LETTER TO THE HONORABLE COLM F. CONNOLLY

OF COUNSEL:

John M. Desmarais (pro hac vice)
Justin P.D. Wilcox (pro hac vice)
Jordan N. Malz (pro hac vice)
Steven M. Balcof (pro hac vice)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
jdesmarais@desmaraisllp.com
jwilcox@desmaraisllp.com
jmalz@desmaraisllp.com
sbalcof@desmaraisllp.com

Kenneth L. Dorsney (#3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

*Attorneys for Defendant*
*Cloud9 Technologies LLC*

Dated: September 28, 2018



September 28, 2018

Kenneth L. Dorsney
302.888.6855
kdorsney@morrisjames.com

**VIA CM/ECF AND HAND DELIVERY**
The Honorable Colm F. Connolly
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

    Re: *IPC Systems, Inc. v. Cloud9 Technologies LLC*, C.A. No. 16-443 (CFC)

Dear Judge Connolly:

  Defendant Cloud9 Technologies LLC ("Cloud9") seeks relief regarding three discovery disputes with Plaintiff IPC Systems, Inc. ("IPC"). *First*, IPC has not identified each purported trade secret at issue with the precision required by law and should be ordered to do so. *Second*, Cloud9 seeks a protective order requiring IPC to precisely identify its purported trade secrets before Cloud9 must make available for inspection its highly confidential source code. *Third*, IPC has not made available for inspection its code and exemplars for its WorldTurret product that Cloud9 asserted as prior art in its invalidity contentions and should be compelled to do so.

**I. IPC SHOULD IDENTIFY THE PURPORTED TRADE SECRETS AT ISSUE WITH PRECISION TO AVOID A "MOVING TARGET" IDENTIFICATION**

  "Generally, a plaintiff in a misappropriation of trade secrets case must identify **with precision** the trade secrets at issue **at the outset of the litigation**." *Givaudan Fragrances Corp. v. Krivda*, No. 08-4409, 2013 WL 5781183, at *4 (D.N.J. Oct. 25, 2013) (emphasis added), *aff'd*, 639 F. App'x 840 (3rd Cir. 2016); *accord Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991); *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986). The required degree of precision is "reasonable particularity." *Hill v. Best Med. Int'l, Inc.*, C.A. No. 09-1194, 2010 WL 2546023, at *3 (W.D. Pa. June 24, 2010); *Engelhard*, 505 A.2d at 33. For example, courts have construed "reasonable particularity" as requiring identification of a "precise formula," "precise numerical dimensions and tolerances," and "exact ingredients." *Big Vision Private Ltd. v. E.I. DuPont De Nemours*, 1 F. Supp. 3d 224, 264–66 (S.D.N.Y. 2014); *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998); *Givaudan*, 639 F. App'x at 845. Precise identification enables the defendant to raise—and the trier of fact to evaluate—defenses that the claimed secret is not a protectable trade secret in the first place and that the defendant does not use it. *See DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680–82 (N.D. Ga. 2007).

  Although it filed suit over two years ago in June 2016, IPC still has not identified each of its purported trade secrets with reasonably particularity. In response to Cloud9's Interrogatory No. 1 (Ex. A), which seeks IPC's trade secret identification, IPC identified only three categories in March 2018: (1) ███████████████████ (2) ███████████████████ and (3) ███████████████████ (Ex. B at 10–14.) After Cloud9 requested a more specific identification for those three categories, IPC *expanded* its response to include 68 purported trade secrets in April 2018. (Ex. B at 15–23.) Among those, IPC set forth a laundry list of 36 purported technical trade secrets in bullet form—i.e., "IPC's confidential and proprietary concept and design" relating to various technological problems—but failed to say what the concepts and designs actually are.

IPC served a third supplemental response on August 8, 2018, purporting to provide further specificity for its technical trade secrets and including a new category of confidential documents that identifies no trade secrets. (Ex. B at 28–112 (technical trade secrets), 114–45 (new category).) For the purported technical trade secrets, IPC's supplement generally describes problems to be solved, challenges IPC's engineers faced, and in some cases the end results obtained. But critically, despite filling over 100 pages and creating the appearance of a substantive response, IPC again failed to identify with precision what each purported technical trade secret *actually is*.

*First*, IPC failed to identify the specific algorithms that it claims are its trade secrets. Although more than one dozen of its purported secrets consist of algorithms (*see* Technical Trade Secret Nos. 3–5, 7–9, 11, 14, 16, 17, 27, and 29, Ex. B at 36–96), IPC has not specified the actual algorithms themselves. For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at 39–40.) Yet IPC does not identify the specific steps of the algorithm nor the numeric value of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ leaving undefined the algorithm that IPC regards as its *own* trade secret. Thus, IPC should, at a minimum, identify through clear language or a flowchart the specific steps and values that constitute each algorithm at issue.

*Second*, IPC's identification of entire source code files and directories does not meet the reasonable particularity required by law. IPC alleges that purported Technical Trade Secret Nos. 3–5, 8, 9, 11, 13–15, 17, 20, 25, 29, and 31 are "described in IPC's code." (*See, e.g.*, Ex. B at 52.) During its inspection of IPC's code, Cloud9 discovered that the identified files comprise hundreds or thousands of lines of code and, for certain purported trade secrets, actually include entire directories—which in turn contain multiple levels of subfolders and files. (*See, e.g.*, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Despite Cloud9's request, IPC has steadfastly refused to identify the specific lines of code that allegedly comprise its purported trade secrets. But IPC cannot satisfy the "reasonable particularity" standard by citing *entire* source code files, let alone entire directories, which "leaves mysterious exactly which pieces of information are the trade secrets," *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002). Nor can IPC shift its obligation to precisely identify its own trade secrets to Cloud9. Indeed, Cloud9 cannot reasonably be expected to review hundreds of files totaling thousands of lines of code and *guess* what in that code IPC contends is its trade secret. IPC should be compelled to pinpoint and produce the specific locations and lines of code that are IPC's purported trade secrets. *See Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, No. 13-cv-01523, 2014 WL 4961437, at *6–7 (S.D. Cal. Oct. 3, 2014).

*Third*, for Technical Trade Secret Nos. 1, 6, 12, 15, 16, 18–23, 25, 26, 28, and 30–36, IPC merely identifies general technical concepts—not the precise way that IPC practices those concepts. (*See* Ex. B at 28–107.) For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ IPC describes its trade secret as the concept of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ without specifying those coefficients or the numerical ▓▓▓▓▓▓▓ that result from the optimization. (*Id.* at 42–43.) Although IPC manages to pin down *some* purported trade secrets (not in dispute here) with precision, many remain indefinite. (*Compare* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) IPC's identification of a concept—not the specific way IPC practices the concept—fails to identify what the purported trade secret actually is. *See Dow Chem. Can. Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 347 (D. Del. 2012) (holding that "conclusory identification" of a "'concept' without any details" is inadequate).

Moreover, Cloud9 should not be required to defend against a "moving target" as the breadth and generality of the identified concepts would allow IPC subsequently to shift its positions (e.g., later providing additional specificity) to avoid Cloud9's defenses. IPC must know how it achieves or performs these concepts, and should be required to describe specifically how it does.

*Fourth*, IPC purported to add a new category of trade secrets entitled ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (Ex. B at 114–45.) This section, however, merely summarizes documents produced by Cloud9 without identifying what purported IPC trade secrets, if any, are at issue. But just because a document is marked "confidential" does not mean that the information in it was secret, let alone that it contains cognizable trade secrets. *See Big Vision*, 1 F. Supp. 3d at 254, 265, 267. For each of these documents, IPC should specifically identify the purported IPC trade secret(s) at issue.

IPC should not be permitted to hedge its trade secret identification through vague descriptions and references to unspecified code and voluminous documents, such as 200-page user guides (Ex. B at 129). To crystallize the parties' trade secret disputes and avoid a "moving target," Cloud9 requests that IPC be ordered to comply with the reasonable particularity standard by clearly defining the scope of its alleged trade secrets, as provided in the attached proposed order.

## II. IPC SHOULD NOT BE PERMITTED TO INSPECT CLOUD9'S CODE BEFORE IPC IDENTIFIES ITS PURPORTED TRADE SECRETS WITH PRECISION

Cloud9 requests that the Court enter a protective order that requires IPC first to identify each purported technical trade secret with reasonable particularity **before** Cloud9 must make its code available for inspection by IPC. Cloud9's request is consistent with precedent in this District that a trade secret plaintiff must first disclose the trade secrets at issue before obtaining access to the defendant's own confidential code. *See Leucadia*, 755 F. Supp. at 637. Among other things, this approach prevents the plaintiff from "mold[ing] its cause of action around the discovery it receives." *DeRubeis*, 244 F.R.D. at 681. Indeed, should IPC inspect Cloud9's code before it has precisely identified its purported trade secrets, IPC could effectively reverse engineer its identification of trade secrets based on, and with hindsight benefit of, its analysis of Cloud9's code. (*See, e.g.*, Ex. B at 51, 56, 66 (improperly citing Cloud9 documents in attempt to define IPC's purported trade secrets).) To prevent that unfair prejudice to defendants such as Cloud9, courts regularly stay discovery of defendants' proprietary information, including confidential source code, "until Plaintiffs identify the alleged misappropriated trade secrets with reasonable particularity." *E.g.*, *Dura Global Techs., Inc. v. Magna Donnelly, Corp.*, No. 07-cv-10945, 2007 WL 4303294, at *5 (E.D. Mich. Dec. 6, 2007); *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-00285, 2012 WL 2342929, at *5 (D. Nev. June 19, 2012); *Hill*, 2010 WL 2546023, at *4.

## III. IPC SHOULD BE ORDERED TO MAKE AVAILABLE ITS CODE AND EXEMPLARS FOR THE WORLDTURRET PRIOR ART

The WorldTurret prior art is an IPC product that Cloud9 asserted in its invalidity contentions. (Ex. C.) Cloud9 served straightforward requests for exemplars and code relating to WorldTurret. (Request for Production Nos. 76, 77, Ex. D.) IPC objected on grounds of relevance and has not agreed to produce or make available for inspection the requested exemplars and code. (Ex. E, at 10; *see* Ex. F.) Because the WorldTurret prior art is undeniably relevant at least to Cloud9's patent invalidity defense, IPC should be ordered to produce or make available the requested exemplars and code for inspection without delay. *See LG Elecs., Inc. v. Hitachi, Ltd.*, No. 5:07CV90, 2009 WL 10677426, at *4–5 (E.D. Tex. Mar. 2, 2009).

>Respectfully,
>
>*/s/ Kenneth L. Dorsney*
>
>Kenneth L. Dorsney (I.D. #3726)

Enclosures

cc: All counsel of record via CM/ECF and electronic mail

## RULE 7.1.1 CERTIFICATE

Counsel for Cloud9 Technologies LLC confirms that a reasonable effort has been made to reach agreement on the matters set forth in this letter. The effort included oral communication and Delaware counsel for both parties. IPC Systems, Inc.'s counsel indicated that IPC Systems, Inc. will not agree to relief sought by Cloud9 Technologies LLC. (*See* Ex. G; Ex. H; Ex. I.)

/s/ *Kenneth L. Dorsney*

Kenneth L. Dorsney (#3726)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IPC SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 16-443 (CFC) |
| v. | ) |
| | ) |
| CLOUD9 TECHNOLOGIES LLC, | ) |
| | ) |
| Defendant. | ) |

## [PROPOSED] ORDER

A Motion to Compel and Motion for Protective Order having been made by letter on September 28, 2018 and at oral argument on October 2, 2018, by Defendant, Cloud9 Technologies LLC, Plaintiff, IPC Systems, Inc. having responded, and the Court having heard argument of counsel, being fully advised and of the opinion that the motions should be granted;

Now, therefore:

1. IT IS ORDERED that IPC identify the alleged trade secrets at issue in this case with reasonable particularity within 10 days of this Order:

    a. <u>Algorithms:</u> For Technical Trade Secret Nos. 3–5, 7–9, 11, 14, 16, 17, 27, and 29, IPC shall provide a one-paragraph description, or flowchart, that concisely and precisely defines the algorithm, defining the step-by-step procedure(s) that the algorithm comprises and any specific numeric parameters or values that the algorithm uses;

    b. <u>Source Code:</u> For Technical Trade Secret Nos. 3–5, 8, 9, 11, 13–15, 17, 20, 25, 29, and 31, IPC shall pinpoint the location, filename, and specific lines of

1

source code that describe or implement the alleged trade secret, and produce a print-out of the source code embodying that alleged trade secret to Cloud9;

c. <u>Concepts:</u> For Technical Trade Secret Nos. 1, 6, 12, 15, 16, 18–23, 25, 26, 28, and 30–36, IPC shall supplement its prior responses with one paragraph that concisely and precisely defines the alleged trade secret; and

d. <u>Documents:</u> For each document listed in Plaintiff's Third Supplemental Response to Defendant's Interrogatory No. 1, IPC shall specifically identify each alleged trade secret contained within it in accordance with the foregoing provisions of this paragraph and each page in which each such alleged trade secret appears.

2. IT IS FURTHER ORDERED that IPC may not inspect Cloud9's source code until after IPC has identified its alleged trade secrets as provided in this Order.

3. IT IS FURTHER ORDERED that IPC make available for inspection, within 10 days of this Order, a working exemplar of each version of the WorldTurret product, responsive to Defendant's Request for Production No. 76; and source code, application code, and any other code for WorldTurret, responsive to Defendant's Request for Production No. 77.

SO ORDERED, this _____ day of _____, 2018.

_____
UNITED STATES DISTRICT JUDGE

**IPC SYSTEMS, INC. v. CLOUD9 TECHNOLOGIES LLC**
**D. DEL., C.A. No. 16-443 (CFC)**

**INDEX OF EXHIBITS**
**TO CLOUD9'S SEPTEMBER 28, 2018 LETTER**

| Exhibit | Document |
|---|---|
| A | ■■■■■■■■■■ |
| B | ■■■■■■■■■■ |
| C | ■■■■■■■■■■ |
| D | ■■■■■■■■■■ |
| E | ■■■■■■■■■■ |
| F | September 17, 2018 Email from Jordan Malz |
| G | August 10, 2018 Email from Joran Malz |
| H | August 31, 2018 Email from Justin Wilcox |
| I | September 7, 2018 Email from Jordan Malz |

# EXHIBITS A – I REDACTED IN THEIR ENTIRETY