IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IPC SYSTEMS, INC., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) C.A. No. 16-443 (CFC) ) |
| CLOUD9 TECHNOLOGIES LLC, | ) REDACTED - PUBLIC VERSION ) |
| Defendant. | ) |

**<u>LETTER TO THE HONORABLE COLM F. CONNOLLY FROM KAREN JACOBS</u>**

OF COUNSEL:

Peter D. Shapiro
David G. Varghese
FITZPATRICK, CELLA, HARPER, AND SCINTO
1290 Avenue of the Americas
New York, NY  10104
(212) 218-2100

Jason M. Dorsky
FITZPATRICK, CELLA, HARPER, AND SCINTO
975 F Street, NW
Washington, DC  20004-1462
(202) 530-1010

Edward J. DeFranco
Joseph Milowic III
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Jonathan Berschadsky
MERCHANT & GOULD P.C.
767 Third Avenue, 23rd Floor
New York, NY  10017
(212) 223-7241

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
kjacobs@mnat.com
skraftschik@mnat.com

*Attorneys for Plaintiff IPC Systems, Inc.*

Originally Filed:  September 28, 20108
Redacted Version Filed:  October 5, 2018

Dear Judge Connolly:

Pursuant to the Court's Procedures governing Disputes Relating to Discovery Matters and Protective Orders, IPC respectfully submits this discovery letter in advance of the October 2, 2018 discovery conference to compel Cloud9 to produce its source code and other improperly withheld discovery and to produce its witnesses for deposition.  As discussed further below, Cloud9 cannot continue to rely on its unfounded complaints about IPC's trade secret identification to withhold discovery relevant to both IPC's patent infringement and trade secret misappropriation claims.

I.      **Background of This Action.**

IPC filed this action in June of 2016, asserting claims for both patent infringement and misappropriation of trade secrets.  IPC alleges that Cloud9 infringes claims of U.S. Patent No. 8,189,566 ("'566 Patent"), entitled "Software Based Trading Turret" and U.S. Patent No. 6,212,177 ("'177 Patent") entitled "Remotely Accessible Key Telephone System."

IPC was founded in 1973 and is a leading provider of global communications solutions and software for the financial services community.  IPC's product line includes solutions such as Unigy 360, the IQ/MAX Omni, and the Maxaccess 1000.  Like many companies, IPC protects its products and investments in research & development through a combination of patenting inventions and maintaining technologies and know-how as trade secrets.

In 2014, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ form Cloud9 and now serve as Cloud9's Chief Executive Officer, Chief Product Officer, and Chief Technology Officer.  Cloud9 competes directly with IPC for many of the same customers.  Several other former IPC employees joined Cloud9 since its formation, with the most recent move occurring in August of 2016.  The former IPC employees who joined Cloud9 are working in essentially the same roles as they did when employed by IPC, despite being privy to IPC's confidential information.

Discovery in this action has revealed that Cloud9's employees misappropriated hundreds of proprietary and confidential IPC files (which were identified as such). Cloud9 apparently identified these files as early as 2016 during discovery in this case, yet failed to either notify IPC or to produce any of the files until April 2018, all the while seeking to move to dismiss the Complaint on grounds it purportedly lacked specificity.[1]  Cloud9 has also continued since this case was filed to press IPC for more and more specificity of its trade secrets (and continues to do so in this dispute), all in an attempt to avoid production of its source code and other documents that may reveal that it has used IPC's trade secrets.  That Cloud9 has fought for so hard and so long to block such production – particularly of its source code – is telling to say the least.

---

[1]     IPC is deeply concerned that Cloud9 is refusing to answer the most basic questions about the hundreds of IPC proprietary files found in its possession, including who had access to them, what the employees are working on, whether the files have migrated within Cloud9 or outside U.S. borders, and what steps Cloud9 is taking to ensure the employees who had access to the files are not using them to compete against IPC.  IPC believes a Court appointed forensic investigation will be needed and is meeting and conferring with Cloud9 regarding same.

The Honorable Colm F. Connolly
September 28, 2018
Page 2

Indeed, over the two-year course of this case, Cloud9 has repeatedly stonewalled IPC for discovery, alternatively demanding more and more specificity of IPC's trade secrets while at other times complaining that IPC has identified too much.[2]  IPC has now revised its list no less than three times in response to Cloud9's repeated demands for more specificity, on March 9, 2018 (Ex. B at 10-14), April 13, 2018 (Ex. B at 14-24), and August 8, 2018 (Ex. B at 25-146). The list is now over **120** pages long and identifies **30** customer list / pricing related trade secrets, **35** technical trade secrets, and more than a dozen different categories of proprietary and confidential documents recently found in the possession of Cloud9's employees.  (Ex. B at 25-146).  As explained below, Cloud9 can no longer hide behind its demands for specificity to avoid producing basic documents about the operation of the accused products; nor can it continue to block the depositions of its witnesses.

I.   **Cloud9 Has Improperly Withheld Discovery Concerning Its Accused Product, Including Source Code, That Is Relevant to Both IPC's Patent Infringement and Trade Secret Misappropriation Claims.**

*Cloud9 should be required to produce technical documents and source code relevant to IPC's patent claims.*  Cloud9 cannot hide behind its complaints about IPC's trade secret identification to avoid producing its source code, first and foremost, because information concerning Cloud9's accused product, the C9Trader, is indisputably relevant to IPC's patent infringement claims.  Cloud9 thus has an obligation to produce relevant information about its accused product, separate and apart from IPC's trade secret claims.  Indeed, had IPC brought only patent claims, there is no question but that Cloud9 would have to produce its source code. That IPC has also filed trade secret claims does not provide an excuse to avoid this required production.[3] IPC has raised this issue multiple times over the past year, but to no avail.[4] Accordingly, Cloud9 should be required to produce or otherwise make available for inspection its C9Trader and its technical documents, including its source code. *See, e.g., York Grp., Inc. v. Pontone*, C.A. No. 2:10-1078, 2012 WL 12895530, at *2 (W.D. Pa. July 24, 2012) (finding the existence of other claims required discovery notwithstanding the defendant's objections to sufficiency of trade secret identification and noting the existence of protective order mitigated the defendant's concerns).  Based on the existence of IPC's patent infringement claims alone, Cloud9 should be required to produce its C9Trader, complete its technical document production and make its source code available for inspection.  Cloud9 is also refusing to make its technical witnesses available for deposition based on this same objection, including Leo Papadopoulos

---

[2] Indeed, at one point, Cloud9 had even threatened to move to strike IPC's list for being too voluminous. (Ex. A, Wilcox E-Mail to IPC's Counsel (May 22, 2018)).

[3] Although IPC has rigorously complied with its obligation to identify the trade secrets at issue, IPC repeatedly asked Cloud9 to produce source code and other information relevant to the patent claims only while the parties disputed the trade secret allegations.  Cloud9 refused to do so.

[4] *See* Ex. C, Shapiro Letter to Cloud9's Counsel (Sept. 26, 2017); Ex. D, Shapiro E-mail to Cloud9's Counsel (Oct. 19, 2017); Ex. E, Plaintiff's Initial Infringement Contentions for the '566 Patent at 2 n.1; Ex. F, Plaintiff's Initial Infringement Contentions for the '177 Patent at 1 n.1.

The Honorable Colm F. Connolly
September 28, 2018
Page 3

(Cloud9's Chief Technology Officer) and Andy Pappas (Cloud9's Chief Architect). This stonewalling has required multiple extensions of the case schedule (D.I. 75; D.I. 115). Now that we are two years into the case, Cloud9 should finally be required to produce all relevant documents concerning the accused product at issue.

**Cloud9 should also be required to produce documents and witnesses relevant to IPC's trade secret claims.** Information concerning the C9Trader is also highly relevant to IPC's trade secret claims. Yet, based on its objection to the sufficiency of IPC's trade secret list, Cloud9 has refused to make its source code available for inspection, to provide dates for depositions of its technical witnesses, or to confirm it has substantially completed its production.

The fact is Cloud9 will never be satisfied with the sufficiency of IPC's trade secret list. As noted above, Cloud9 has alternated between contending that IPC has identified too little or too much. IPC dedicated dozens of man hours from its top engineers working closely with counsel to provide a detailed disclosure of the trade secrets at issue here. For each technical trade secret, IPC provided a detailed description, including what problem it addressed, what was publicly known at the time, what IPC did that was not publicly known and constitutes a trade secret, and a description of how the trade secret is designed and implemented (where appropriate) in IPC's products, including specific citations to produced documents (including identification of code files, where appropriate) where further descriptions and implementations of the trade secrets can be found. For example, IPC's description of its ██████ ████████████████████████████████████ that were publically known at the time and their drawbacks, and the confidential and proprietary solution designed and implemented by IPC that ██████████████████████████████████████████████████████████████████████ *See* Ex. B at 82-85). IPC also made its source code available for inspection and Cloud9 has inspected the code.

Cloud9's suggestion that IPC has not identified the specific lines of code for its "algorithm-based" trade secrets is both a red-herring, and an effort to reduce IPC's trade secrets to nothing by trying to reduce them to lines of code. The trade secrets at issue here are not so limited, however. Indeed, IPC believes this is not a case of slavish copying of lines of code. That is a rare case indeed. Rather, this is a case where employees left and started a competing enterprise – and they took with them, both in their minds and in computer files, trade secrets including customer lists, product features, and technological know-how. They are using this proprietary information to compete for the same customers. Where the technical know-how includes algorithms (i.e., steps that solve a problem), IPC has described those steps in prose and where applicable IPC has pointed to exemplary implementations in source code modules. (*See* Ex. B at 25-112). While the specific lines of code are, of course, also trade secrets, Cloud9 is attempting to recast IPC's claims as involving *only* verbatim copying of lines of code to avoid liability for its misappropriation.

IPC respectfully attaches a proposed order compelling Cloud9 to make its C9Trader source code available for inspection by IPC, and to produce any remaining technical documents related to the C9Trader that Cloud9 has withheld based on IPC's trade secret identification, and to produce its witnesses for deposition.

The Honorable Colm F. Connolly
September 28, 2018
Page 4

                                          Respectfully submitted,

                                          */s/ Karen Jacobs*

                                          Karen Jacobs (#2881)

KJ:ncf
Enclosures
cc:     Clerk of Court (Via Hand Delivery)
        All Counsel of Record (Via Electronic Mail)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IPC SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-443 (CFC) |
| | ) |
| CLOUD9 TECHNOLOGIES LLC, | ) |
| | ) |
| Defendant. | ) |

**[PROPOSED] ORDER**

IT IS HEREBY ORDERED, this _____ day of _____, 2018, that within 14 days of this Order Defendant Cloud9 Technologies LLC ("Cloud9") shall make its C9Trader source code available for inspection by Plaintiff IPC Systems, Inc. ("IPC"), produce any remaining technical documents related to the C9Trader that Cloud9 has withheld based on IPC's trade secret identification, and provide dates for depositions of its witnesses.

_____
U.S.D.J.