IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IPC SYSTEMS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 16-443-CFC |
| | : | |
| CLOUD9 TECHNOLOGIES LLC, | : | |
| | : | |
| Defendant. | : | |

Karen Jacobs, Stephen J. Kraftchik, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Peter D. Shapiro, FITZPATRICK, CELLA, HARPER, AND SCINTO, New York, New York; Jason M. Dorsky, FITZPATRICK, CELLA, HARPER, AND SCINTO, Washington, District of Columbia; Edward J. DeFranco, Patrick D. Curran, Joseph Milowic III, QUINN EMANUEL URQUHART & SULLIVAN LLP, New York, New York; Jonathan Berschadsky, MERCHANT & GOULD, P.C., New York, New York; Thomas J. Leach, MERCHANT & GOULD, P.C., Minneapolis, Minnesota

*Counsel for the Plaintiff*

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, Delaware; John M. Desmarais, Justin P.D. Wilcox, Steven Balcof, Jordan N. Malz, DEMARAIS LLP, New York, New York

*Counsel for Defendant*

**MEMORANDUM OPINION**

_____  OCTOBER 29, 2018
CONNOLLY, UNITED STATES DISTRICT JUDGE

The parties have presented the Court with ten patent terms to construe. The terms come from claims in two patents: U.S. Patent No. 8,189,566 ("the '566 Patent") and U.S. Patent No. 6,212,177 ("the '177 Patent"). I held a *Markman* hearing on October 11, 2018. During the hearing, I construed eight of the terms from the bench. In this Memorandum Opinion, I discuss my construction of the two remaining terms, both of which are found only in the '177 Patent.

## BACKGROUND

The '177 Patent is titled "Remotely Accessible Key Telephone System." The first paragraph of the Patent reads as follows:

> A line telephone stations, often referred to as "trader turrets", are widely used in financial trading networks such as between banks, brokerage houses, and other types of financial institutions. Telephones of this type provide access to a large number of telephone lines, typically a hundred or more. A line is selected by depressing a single key. A trading room can include many telephone key stations so that many transactions can be completed simultaneously.

'177 Patent, at 1:5-12. The peculiar grammar and diction of the quoted language give rise to a number of questions and ambiguities. Did the drafter actually have in mind in the first sentence "a line *of* telephone stations"? But if so, why did he use the plural "are" instead of the singular "is" as the verb form? Perhaps, the drafter meant to refer in the first sentence to "a-line" telephone stations that are each connected separately to a telephone network by a private line? But then again, in

the next sentence, the drafter seems to suggest that a "telephone station" is a "type" of telephone that provides access to a "large number of lines." Perhaps the first word of the patent ("A") is a typographical error — an indefinite article left over from a prior draft of the patent; and the drafter really had in mind "line telephone stations," whatever they might be. Things are further complicated by the introduction in the paragraph's third sentence of the concept of "telephone key stations." Are these the same "telephone stations" referred to in the first sentence or something different? Is a "telephone key station" also a type of "telephone"?

Unfortunately, the grammar and diction peculiarities of the first paragraph are typical of what follows in the written description and claims of the '177 Patent's specification.[1] Parsing the '177 Patent is no easy task.

The patent's written description has a three-paragraph "Summary of Invention" section. The first of the three paragraphs reads as follows:

> The system according to the invention provides both a voice channel and a data channel to a remote

---

[1] Section 112(b) of Title 35 provides that "[t]he specification shall conclude with one or more claims[.]" This language makes clear that the specification includes the claims asserted in the patent, and the Federal Circuit has so held. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc) ("Claims must be read in view of the specification, of which they are a part."), *aff'd,* 517 U.S. 370 (1996). The Federal Circuit and other courts, however, have also used "specification" on occasion to refer to the written description of the patent as distinct from the claims. *See, e.g., id.* ("To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history."). To avoid confusion, I will refer to the portions of the specification that are not claims as "the written description."

> trader turret via public networks. The voice channel is
> preferably established using the public telephone
> network. The data channel is established via the Internet.
> The World Wide Web (WWW) is used to supply
> graphical information via the Internet to provide a line
> status display at the remote site. The channels on these
> two public networks are coordinated to provide remote
> access to the trading room switching network. With this
> arrangement a trader can engage in trading activities
> from a home office or while traveling.

*Id.* at 1:30-40. Thus, according to this summary, the invention purports to connect a remote trader turret to "the trading room switching network" using one of more "public networks."

The "Detailed Description of A Preferred Embodiment" section of the patent describes a "typical office switching network" which "establishes a voice path" between "trader turrets (key telephones)" and "selected lines," and which uses "line cards" to "maintain the status of each of the lines." *Id.* at 2:15-20. According to the preferred embodiment description, "[i]n most cases lines are private lines connecting to other brokers and financial traders." *Id.* at 2:20-22. According to the "background of the invention" section of the written description, "[e]ach key telephone station in a trading room has voice channel access to other stations in the trading room and to a large number of outside lines of different types (public, private, four wire, etc.)." *Id.* at 1:13-16 (emphasis added).

There is no mention of "private lines" in the written description other than in the two sentences just quoted. Claim 1 of the patent refers to "private line key telephones" and claim 8 refers to "a private line office network"; but those terms are recited nowhere else in the specification. The term "an office network" is recited in numerous claims, *see, e.g., id.* at 3:30; *id.* at 4:42-43, but it is not mentioned in the written description. The written description appears to use the terms "office system," "office switching network," "trading room switching network," and "switching network" interchangeably. *See, e.g., id.* at 1:54-56 ("The *office system* connects to the calling party and then dials the remote trader via the public telephone system to connect the parties."); *id.* at 2:15-18 ("FIG. 1 illustrates a typical *office switching network* 10 which includes the backroom switching gear such as in the MX system sold by IPC Information Systems Inc., assignee of this application."); *id.* at 1:36-38 ("The channels on these two public networks are coordinated to provide remote access to the *trading room switching network*."); *id.* at 2:19-20 ("Trader turrets (key telephones) 12 and 13 are coupled to the *switching network* which establishes a voice path to selected lines 11."). The written description also appears to equate "public telephone network," "public switching telephone network," and "public telephone system." *See id.* at 1:33-34 ("The voice channel is preferably established using the *public telephone network*."); *id.* at 2:58-60 ("A voice channel can be completed from the office switching network to a

telephone **28** via the *public switching telephone network* **29**."); *id.* at 3:13-15 ("The office switching network calls the associated telephone via the *public telephone system* **29** and connects the telephone to the indicated calling party.").

## LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324).

Absent a special and particular definition created by a patent applicant, terms in a claim are to be given their ordinary and accustomed meaning. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312-13 (internal citations omitted). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular

claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. The patent specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The court may also consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317-19 (internal quotation marks and citations omitted). "Extrinsic evidence is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of the claims." *Markman*, 52 F.3d at 981. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC*, 158 F.3d at 1250.

## CLAIM CONSTRUCTION

The two terms of the '177 Patent that remain in dispute are (1) claim 8's preamble, on which claims 9, 10, and 11 depend; and (2) the term "office network" in claims 9, 10, and 11. The relevant claims provide:

> **8.** *A method of establishing remote access to a private line office network including a plurality of key telephone stations with line status information being displayed at said telephone stations, including the steps of:*

-7-

a) establishing a data channel between *said private line office network* and a computer at a remote site via public network;

b) establishing a remote line status display at said remote site based on data received via said data channel;

c) selecting an accessible line from said remote line status display at said remote site;

d) communicating said selection from said remote site to *said private line office network* via said data channel;

e) establishing a voice channel independent of said data channel to said remote site via public network according to said selection from said remote site.

9. A method of establishing remote access to *an office network* according to claim 8 wherein said data channel is established via [sic] Internet.

10. A method of establishing remote access to *an office network* according to claim 8 wherein said voice channel is established via the public telephone switching network.

11. A method of establishing remote access to *an office network* according to claim 8 wherein said voice channel is established via the Internet.

'177 Patent, at 4:25-50 (disputed terms in italics).

## I. CLAIM 8'S PREAMBLE

The parties dispute whether claim 8's preamble is limiting. I find that the preamble limits the scope of claim 8.

The Federal Circuit set forth the principles that apply to construing a claim's preamble in *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 807-08 (Fed. Cir. 2002):

> Whether to treat a preamble as a limitation is a determination 'resolved only on review of the entire[] . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."
>
> In general, a preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to giving life, meaning, and vitality' to the claim. Conversely, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention."
>
> No litmus test litmus test defines when a preamble limits claim scope. Some guideposts, however, have emerged from various cases discussing the preamble's effect on claim scope. . . . [D]ependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention. Likewise, when the preamble is essential to understand limitations or terms in the claim body, the preamble limits claim scope.
>
> Further, when reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation.

*Id.* at 808 (internal citations omitted) (first alteration in the original; second alteration added).

In this case, the preamble to claim 8 recites essential structure — "a private line office network" that includes "a plurality of key telephone stations" at which "line status information [is] displayed." In addition, the term "said private line office" in the body of the claim depends for antecedent basis on the "private line office" term in the preamble. Thus, the meaning of the preamble is essential to understanding the terms in the body of the claim, and the preamble "is necessary to giving life, meaning, and vitality to the claim." *Id.*

## II. THE TERM "*OFFICE NETWORK*" IN CLAIMS 9, 10, AND 11

Claims 9, 10, and 11 each read in relevant part: "A method of establishing remote access to an office network according to claim 8[.]" *See* '177 Patent, at 4:42-50. The parties dispute how I should construe "an office network." IPC argues that the term "refers to the term 'private line office network'" which, it says, "needs no construction." D.I. 84 at 18. Cloud9 argues that "an office network" is indefinite but also that it means something different than a "private line office network." D.I. 92 at 20.

I agree with IPC that "an office network" in claims 9, 10, and 11 means the same thing as "a private line office network" and "said private line office network" as those terms are used in claim 8. The language of claims 9, 10, and 11 makes this point clear, as those claims describe "an office network *according to claim 8*." "Quite apart from the written description and the prosecution history, the claims

themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips,* 415 F.3d at 1314 (citations omitted). There is only one "office network" described in claim 8 — i.e., a "private line office network." Moreover, as I just concluded, "private line office network" is a limitation on claim 8. Therefore, "an office network according to claim 8" has the same meaning as the term "a private line office" as used in claim 8.

I disagree with IPC that the term "private line office network" does not require construction, but as the parties have not presented arguments as to how the term should be construed, I will leave that construction to a later day.

\* \* \* \* \*

An order consistent with this Memorandum Opinion and my oral rulings during the *Markman* hearing on October 11, 2018 will follow.