# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200
(302) 658-3989 FAX

Stephen J. Kraftschik
(302) 351-9378
(302) 498-6233 FAX
skraftschik@mnat.com

January 15, 2019

**BY E-FILING**

The Honorable Colm F. Connolly
U.S. District Court
  for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re: *IPC Systems, Inc. v. Cloud9 Technologies LLC,* C.A. No. 16-443 (CFC)

Dear Judge Connolly:

      Plaintiff IPC Systems, Inc. ("IPC") respectfully submits this letter in response to the Court's January 9 Order asking whether *Affinity Labs of Texas v. Directv, LLC.,* 838 F.3d 1253 (Fed. Cir. 2016) ("*Affinity*") and *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329 (Fed. Cir. 2017) ("*Two-Way Media*") (collectively, the "Cases") are relevant to Cloud9 Technologies' ("Cloud9") motion to dismiss. They are. A comparison with those Cases emphasizes the patent eligibility of the instant claims: whereas the ineligible claims of the Cases attempted to claim a broad landscape using conventional technologies, the asserted claims here teach a specific and useful patentable solution.

      In *Affinity*, the claims lacked "a particular way of performing the function [of wirelessly communicating regional content]." 838 F. 3d at 1258 ("nothing in claim 1 . . . is directed to *how* to implement out-of-region broadcasting on a cellular telephone.") (emphasis in original). And the claims recited generic features of cellular phones used in conventional ways to implement the abstract

The Honorable Colm F. Connolly
January 15, 2019
Page 2

idea. In doing so, the claims described a wide landscape of use and were not directed to any particular implementation.

In *Two-Way Media*, the claims also did not "sufficiently describe *how* to achieve . . . results in a non-abstract way." 874 F. 3d at 1337 (emphasis added). The claims failed to recite either a specific protocol or selection signal. *Id*. Thus, the claims did not recite more than the abstract idea, itself. *Id*.

By contrast, claim 1 of the '566 recites specific implementation details for *how* to perform the claimed functions to achieve a useful result. Claim 1 first describes an architecture of technical components, including a turret switching system that communicates with a web server, a turret device and a remote communications device via a first communications network, and the web server communicates to a client device by a second communications network. Unlike the Cases, however, the '566 claims recite how to achieve a useful result: an interface seizes a line "***by*** causing the client device to communicate a predetermined message to the turret switching system over the second communication network." (emphasis added). The claimed "predetermined message" further enumerates a turret-specific implementation in that it contains information identifying particular turret resources and functionality available on the turret to be performed that is understood by the turret switching system. *See* D.I. 162. This "by" clause is exactly what the claims in the Cases lacked: implementation details that narrow and explain *how* to achieve a useful result. Furthermore, the '566 patent provides specific examples of the predetermined message propagating through the technical components. FIGS 7-9, Cols. 7:38-8:11:

The Honorable Colm F. Connolly
January 15, 2019
Page 3



FIG. 8

Similarly, the '177 claims provide specific implementation details that were lacking in the Cases. This Court found the preamble of claim 8 limiting. D.I. 162. Thus, the claim reads as "a method for establishing remote access" (a very useful result for traders when this patent was filed in 1996, see col. 1:6-27) with a number of required features listed in the preamble, followed by "including the steps of:" and then providing the exact type of implementation details lacking in both Cases. The steps provide details of which elements communicate with which other elements and by which channels.

Finally, the Cases rely on the determination that the claims involved conventional elements used in conventional ways. *See* 838 F. 3d at 1261; 874 F. 3d. 1338-39. By contrast, the claims of the '566 and '177 patents use elements that were not conventional *in the field of trading turrets* at the time of filing. *See* '566 patent, col. 2:17-45 (describing how, traditionally, PBX systems and conventional computers were ill-suited to act as trading turrets); '177 patent, col. 1:6-27. Any attempt made by Cloud9 to contradict such statements in the patent creates issues of fact, making a §101 determination inappropriate at this stage. *Berkheimer v. HP Inc.*, 881 F. 3d. 1360, 1369 (Fed. Cir. 2018) ("Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination."). Notably, in a case cited by *Two-Way Media*, the Federal Circuit found a claim involving conventional elements to be non-abstract because it "eliminates many 'complications' inherent in previous solutions," similar to the

The Honorable Colm F. Connolly
January 15, 2019
Page 4

'566 and '177 claims. *See Thales Visionix Inc. v. US,* 850 F. 3d 1343, 1348 (Fed. Cir. 2017).

For the above reasons, a comparison with *Affinity* and *Two-Way Media* emphasizes the claims eligibility.

IPC respectfully requests a hearing to allow further discussion of the recited implementation details.

Respectfully,

*/s/ Stephen J. Kraftschik*

Stephen J. Kraftschik (#5623)

SJK:ncf

cc:   Clerk of Court (*by hand delivery*)
      All Counsel of Record (*by e-mail*)

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing contains 743 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The foregoing word count includes only the body of the letter.

/s/ Stephen J. Kraftschik
_____
Stephen J. Kraftschik (#5623)